IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY DENTON, | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 1032 |
| | ) | |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

## I. BACKGROUND

### A. Facts[1]

Plaintiff Jimmy Denton ("Denton") worked for Defendant Chicago Transit Authority (the "CTA") from October 12, 1967 until his termination in early 2004. The CTA originally hired Denton as a Bus Operator. After the CTA offered Denton the job, it required him to undergo a medical examination to determine his fitness for this position. The parties do not explain whether there were federal or other regulations in place in 1967 regarding the medical certification of bus drivers, but at present, the CTA is subject to regulation by the federal

---

[1] The Court takes the facts from the parties' Local Rule 56.1 Statements and materials cited to therein, and notes disputed facts within the body of this Opinion.

1

Department of Transportation, which requires that commercial drivers, including bus drivers, be medically certified. See 49 C.F.R. § 391.41.

In 1976, Denton was injured in an accident. It is not clear from the record what the nature of this accident was, but Denton indicated in his deposition testimony that he sustained injuries to his head, back, and hand. As a result of the accident, Denton missed approximately two years of work. When Denton returned to the CTA in 1978, he was no longer able to drive a bus due to the lingering effects of his injuries. The CTA therefore assigned Denton to the position of Collector, a position within the broader CTA job classification of Bus Operator. Denton was subjected to a medical examination before resuming work. As a Collector, Denton collected fares, made change, checked passes, issued transfers, and assisted passengers in boarding buses.

At some point during the early 1980's, the CTA began using vending machines that allowed passengers to purchase stored-value fare cards that could be used to gain entrance to CTA buses and trains. The implementation of this technology greatly reduced the need for manual fare collectors on CTA buses and trains, and as a result, the CTA began the process of reducing the number of Collectors it employed. Most Collectors were eventually phased out through attrition or retirement, and by December 2003, Denton held the sole remaining Collector position at the CTA. Due to budgetary considerations and ongoing improvements to the CTA's electronic fare collection equipment, the CTA decided to formally eliminate the Collector position in late December 2003.

Diane Traxler ("Traxler"), then the CTA's Manager for Contract Administration, drafted a letter dated December 31, 2003 on behalf of Robert Gierut ("Gierut"), the CTA's Vice President for Employee Relations, to the Amalgamated Transit Union Local 241 (the "Union")

stating that the CTA would no longer staff the one remaining Collector position, and that Denton would therefore need to be reassigned to another position within the CTA. Def.'s Ex. A. The letter also invited Denton and his Union representative Leon London ("London") to meet with CTA Employee Relations personnel on January 8, 2004 to discuss Denton's reassignment and evaluate his fitness for the position of Bus Operator or other alternative positions. Id. The letter does not indicate that Denton was discharged from employment at the CTA – in fact, the letter explains that in addition to being evaluated for another position within the CTA, Denton would be fully compensated according to his normal work schedule for January 8, 2004. Id.

Denton arrived at CTA headquarters for the January 8, 2004 meeting without London. When Denton arrived, Traxler either asked or told him to go to the CTA's Medical Department for a medical evaluation. Traxler then took Denton to the CTA's Medical Director, Dr. Irma Realiza ("Realiza"). A few minutes later, Realiza called Traxler and explained that Denton was refusing to undergo the drug and alcohol screening portion of the evaluation. Traxler then decided that instead of insisting that Denton immediately take the drug and alcohol test, she would meet with London in order to assure that Denton understood his rights. Traxler and Denton returned to Traxler's office to await London's arrival. Traxler then reiterated to Denton the essential portions of the December 31, 2003 letter: (1) the position of Collector had been eliminated; (2) the CTA was going to place him in another position; and (3) before the CTA could place him in a new safety-sensitive position such as Bus Operator or Box Puller, he would have to complete the medical exam, including a drug and alcohol screening.

London arrived shortly thereafter and spoke with Denton. London first inquired as to whether Denton still had his commercial driver's license. Denton replied that he did not.

London then informed Denton that the CTA would find him another position with no commercial driving responsibilities. Denton denies that this conversation took place, but offers no citation to any record evidence in support of this denial. See Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial."). Denton asserts that there was no formal offer or agreement between the CTA and Denton regarding an alternate position at this time, and the CTA does not argue otherwise.

Shortly following this conversation, Traxler left the office to give Denton and London the opportunity to speak privately. After conferring with Denton, London informed Traxler that Denton needed additional time to consider his options. Traxler then prepared a "Record of Interview," which she, Denton, and London signed. That "Record of Interview" states:

> On or about Jan. 7, 2004 you were directed by 77th Gar. to report to the Mart for a Medical Exam & to Employee Relations. You reported as scheduled; however you and your union representative Leon London requested some time to consider the information presented to you about the elimination of the collector job, your current position. The CTA has directed a medical exam & you cannot return to work until such exam takes place. Upon determination of your fitness for alternate placement – the CTA & Union have agreed to meet with you to discuss alternate placement. In the interim, the CTA & Union have agreed to afford you until Thurs. Jan. 15, 2004 to take the medical exam & or apprise Diane Traxler, Mgr., Contract Admin. at 312-222-6117 of your decision to take the exam, retire or other concerns. The CTA is not directing in any way your retirement. The CTA has eliminated the collector job due to technology & fare collection & budget issues. The CTA requires a medical exam to determine alternate placement in accordance with the contract.
> You are directed to report to Employee Relations on or before Jan. 15, 2004 in Rm. 770 of the Mart (Empl. Rel.) to meet with Elaine Bledsoe & Diane Traxler on or before 1/15/04 to reschedule your medical exam.
> Failure to report or call on or before 1/15/04 may result in disciplinary action up to & including discharge.
> All time from 1/8/04 until your return to work will be unpaid.
> * Mr. Denton's signature below represents that he acknowledges receipt of

> this document, understands it, does not necessarily represent his agreement, does not represent discipline, represents he's had union representation.

Def.'s Ex. B.

Denton testified in his deposition that he was unaware of any medical condition existing at this time that would have caused him to fail any part of the examination. Denton Dep., at 42. In fact, Denton does not assert that he was disabled at any point during the events leading to his discharge. He refused to take the exam not because he was concerned he would not pass it, he says, but rather because he believed it was "discriminatory . . . there's no medical exam before a job offer." Id., at 41.

Following Denton's meeting with Traxler, London gave Denton a copy of the Record of Interview and instructed Denton to report for his medical examination on or before January 15, 2004. London then explained to Denton, as Traxler had done, that if he wanted to continue to work for the CTA, it was mandatory that he complete the medical exam. During the week prior to the January 15 deadline, London attempted to contact Denton numerous times to reemphasize the importance of Denton's taking the medical exam. These attempts were apparently unsuccessful. London's deposition testimony, which Denton does not dispute, reveals that London sent Denton a certified letter regarding the situation, and also sent CTA Bus Operators to Denton's home to personally communicate with Denton. On January 12, 2004, however, Denton sent Traxler a letter which read in its entirety: "I won't be there on January 15, 2004 but I would let you know." Def.'s Ex. C. Denton failed to appear at CTA headquarters or the 77th Street Garage on January 15, 2004.

On January 16, 2004, Robert Takagi ("Takagi"), then the General Manager of the 77th Street Garage, sent Denton a letter via certified mail directing Denton to report to his office no later than January 23, 2004 to explain his ongoing absence from work. This letter also explained that Denton's failure to appear by January 23, 2004 would result in discipline, including possible termination. Denton asserts that he did not receive this letter. The CTA, however, has included a copy of this letter with its Motion for Summary Judgment. The letter is marked "CERTIFIED RETURN RECEIPT REQUESTED; RECEIPT NO. 7000-0520-0013-5868-0607." Pl.'s Ex. E. Denton failed to appear for work on January 23, 2004, failed appear for his medical examination, and failed to advise CTA Employee Relations of his preference regarding a new position. Tagaki then sent Denton another letter via certified mail directing him to report no later than January 30, 2004. This letter indicated that Denton's failure to appear would result in his termination. Denton asserts that he did not receive this letter. The CTA, however, has included a copy of this letter with its Motion for Summary Judgment. The letter is marked "VIA CERTIFIED U.S. MAIL; RETURN RECEIPT REQUESTED; RECEIPT NO. 7000-0520-0013-5868-0645." Pl.'s Ex. F.

Denton again failed to appear at work on January 30, 2004, failed to appear for his medical examination, and failed to contact CTA Employee Relations. The CTA subsequently sent Denton a Notice of Discharge via certified mail on February 9, 2004 indicating that due to his repeated failures to report for work and to submit to a medical exam, he was considered absent without official leave and was therefore discharged from the CTA. Denton asserts that he did not receive this letter. The CTA, however, has included a copy of this letter with its Motion

for Summary Judgment. The letter is marked "VIA CERTIFIED U.S. MAIL; RETURN RECEIPT REQUESTED; RECEIPT NO. 7000-0520-0013-5867-1735." Pl.'s Ex. G.

**B. Procedural History**

On March 31, 2004, Denton filed a case with the Illinois Labor Relations Board ("ILRB") alleging that the Union failed to properly represent him, resulting in his termination from employment with the CTA. After conducting an investigation, the ILRB dismissed the case.

Denton then filed two separate discrimination charges with the Equal Employment Opportunity Commission ("EEOC"). Denton filed the first of these charges on August 10, 2004, alleging that the CTA discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"). He filed his second EEOC charge on October 15, 2004, alleging that the CTA's requirement that he submit to a medical exam before changing positions violates the Americans with Disabilities Act ("ADA"). The EEOC dismissed Denton's ADEA claim and issued him a right to sue letter on October 19, 2004. On November 22, 2004, the EEOC dismissed Denton's ADA claim and issued him a right to sue letter.

Denton filed suit, pro se, against the CTA alleging violations of the ADEA on December 27, 2004. The Court dismissed the case pursuant to Denton's motion to voluntarily dismiss on October 24, 2005.

Denton filed the instant case on February 22, 2005. Denton again filed suit pro se, and again alleges that the CTA's requirement that he submit to a medical exam before changing positions violates the ADA. Defendants were the CTA and Traxler. The Court dismissed Traxler from the case on January 9, 2008. The CTA is the sole remaining Defendant, and it filed

the instant Motion for Summary Judgment on October 16, 2009. Denton is now represented by counsel. The Motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Hunter v. Amin, 583 F.3d 486, 489 (7th Cir. 2009). In adjudicating a motion for summary judgment, the Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Zerante v. DeLuca, 555 F.3d 582, 584 (7th Cir. 2009); Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 n.1 (7th Cir. 2007). The Court must therefore not, at this stage of the litigation, "make credibility determinations, weigh the evidence, or decide which inferences to draw from facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "[T]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The court must therefore "look at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." Payne, 377 F.3d at 770.

In order to survive a motion for summary judgment, the nonmoving party must identify specific portions of the record that demonstrate the existence of a genuine triable issue of material fact. Hemsworth, 476 F.3d at 490 ("[T]he nonmoving party must identify with

8

reasonable particularity the evidence upon which the party relies."); Murphy v. ITT Technical Servs., Inc., 176 F.3d 934, 936 (7th Cir. 1999); Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). On the other hand, a summary judgment movant will prevail where the record as a whole demonstrates that "a rational trier of fact could not find for the non-moving party." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 994 (7th Cir. 2003).

### B. Defendant's Motion for Summary Judgment

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); Williams v. Excel Foundry & Mach., Inc., 489 F.3d 309, 310-11 (7th Cir. 2007). A court's first order of business in a typical ADA case would ordinarily be to inquire as to whether the plaintiff was disabled within the meaning of the ADA. Williams, 489 F.3d at 311. However, in this case Denton admits that he is not disabled, but asserts that the CTA nevertheless violated the ADA by requiring him to submit to a pre-job offer medical exam. Denton directs the Court to the following section of the ADA:

**(d) Medical examinations and inquiries**
. . .
> **(2) Preemployment**
> **(A) Prohibited examination or inquiry**
> Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
>
> . . .
>
> **(3) Employment entrance examination**
> A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant . . . .

42 U.S.C. § 12112(d)(2)-(3).

9

In his Memorandum of Law in Opposition to the CTA's Motion for Summary Judgment, Denton asserts that when he met with Traxler on January 8, 2004, he was not employed by the CTA because his position had been eliminated. Because his position had been eliminated, he argues, he was a pre-offer job candidate. As a pre-offer job candidate, he asserts, it was a violation of § 12112(d)(2)-(3) for the CTA to require him to submit to a medical exam at that time regardless of whether he was disabled. In order for Denton to survive the CTA's Motion for Summary Judgment, it must therefore be the law in the Seventh Circuit that § 12112(d) applies to non-disabled individuals, and Denton must present evidence that he was indeed a pre-offer job candidate.

The Court must thus first determine whether a non-disabled job applicant can state a valid claim under § 12112(d). The CTA asserts that the law regarding this question is unsettled. The Court does not agree. The CTA has previously filed a Motion to Dismiss in which it asserted that Denton had not stated a claim upon which relief could be granted because he had not alleged that he was disabled, but the Court denied that Motion, citing several cases holding that non-disabled plaintiffs could state a valid cause of action under § 12112(d). See Minute Order of January 9, 2008. In addition, Denton has presented case law indicating that the Seventh Circuit and other courts have concluded that it is not necessary to allege a disability in order to proceed under § 12112(d). Murdock v. Washington, 193 F.3d 510, 512 (7th Cir. 1999) ("Title I of the ADA, prohibiting disability discrimination in employment, has a section limiting medical testing for disabilities, see 42 U.S.C. § 12112(d)(2)-(4), and does not require that an individual be disabled to state a claim . . . ."); Karraker v. Rent-A-Center, Inc., 239 F. Supp. 2d 828, 834-35 (C.D. Ill. 2003) (citing Cossette v. Minn. Power & Light, 188 F.3d 964 (8th Cir. 1999);

Fredenburg v. Contra Costa County Dept. of Health Servs., 172 F.3d 1176 (9th Cir. 1999); Griffin v. Steeltek, Inc., 160 F.3d 591 (10th Cir. 1998)). The Court therefore finds that a non-disabled plaintiff can state a cause of action under § 12112(d).

However, Denton's case falls short at the Summary Judgment stage of this litigation because all the available evidence indicates that Denton was not a pre-offer job candidate under the rubric of § 12112(d)(2)-(3) when the CTA ordered him to submit to a medical exam, but was rather a current employee of the CTA. The letter sent by Gierut to the Union on December 31, 2003 did not indicate that Denton was terminated. Instead, the letter explained that:

> Mr. Denton will be directed to report to Employee Relations on Thursday, January 8, 2003 [sic] at 0900 hours in lieu of his regularly scheduled work. Upon reporting to Employee Relations, Mr. Denton will be escorted to [the] CTA's Human Resources (Medical Services) Department to determine his fitness for duty in his primary classification of bus operator and/or alternate positions. As agreed upon on a non-precedent setting basis between Employee Relations and the Union, Mr. Denton will be compensated for Thursday, January 8, 2003 [sic] in accordance with his regular work schedule. Following Mr. Denton's examination, he will be directed to return to Employee Relations to meet with Leon London, Local 241, Elaine Bledsoe, General Manager, Contract Administration, Policy & Compliance, and Diane Traxler, Manager, Employee Relations.

Def.'s Ex. A. The Record of Interview prepared by Traxler and signed by Denton following their January 8, 2004 meeting also does not indicate that Denton was terminated at that time, but explained instead that the CTA was going to place Denton in a new position. "The CTA is not directing in any way your retirement . . . The CTA requires a medical exam to determine alternate placement in accordance with the contract." Def.'s Ex. B. In addition, the letter sent by Takagi to Denton on January 16, 2004 does not indicate that Denton had been terminated. Instead, that letter expresses concern that Denton did not report to Employee Relations as directed, and orders Denton

11

to report to the 77th Street Garage on or before January 23, 2004 to explain his absence. The letter indicates that "[f]ailure to respond will result in your discharge." Def.'s Ex. E. The letter sent by Tagaki to Denton on January 23, 2004 again expresses concern with Denton's failure to report to Employee Relations or the 77th Street Garage, and emphasizes that *"failure to report as directed will result in your discharge* from the Chicago Transit Authority." Def.'s Ex. F. Finally, on February 9, 2004, Takagi sent Denton a Notice of Discharge which stated in part, "effective February 9, 2004 your employment with the Chicago Transit Authority is terminated." Def.'s Ex. G.

Denton asserts, and the CTA does not dispute, that the CTA did not offer Denton a new position on January 8, 2004. However, Denton offers no evidence that he was not an employee of the CTA as of that date. In fact, the only evidence presented by either party on this issue, as the Court has outlined above, demonstrates that Denton was a CTA employee on January 8, 2004, and was not discharged until February 9, 2004. The Court acknowledges that the record indicates the CTA stopped paying Denton following the January 8, 2004 meeting. The Court cannot construe this fact as evidence that Denton was terminated on that date, however. Employers may temporarily cease paying employees for any number of reasons, for example, suspension or voluntary leaves of absence. See United Food & Commercial Workers, Local 1546 v. Illinois-American Water Co., 569 F.3d 750, 752-53 (7th Cir. 2009); Leffel v. Valley Fin. Servs., 113 F.3d 787, 790 (7th Cir. 1997). The Court therefore finds that Denton was not a pre-offer job candidate on January 8, 2004, the date he was initially directed to take his medical exam, and remained an employee of the CTA until his discharge on February 9, 2004.

As a current employee of the CTA during the time period in which the CTA sought to subject him to a medical exam, Denton cannot rely on the provisions of § 12112(d)(2)-(3), which prohibit subjecting pre-offer job candidates to medical testing. As a current employee of the CTA during that time, Denton was subject to medical exams pursuant to § 12112(d)(4). See 42 U.S.C. § 12112 (d)(4)(A) (providing that employers may subject employees to medical tests as long as those tests are "job-related and consistent with business necessity."). His claim under 42 U.S.C. § 12112(d)(2)-(3) therefore fails.

In the alternative, Denton admits that he was a CTA employee during the time period at issue, but asserts that the medical exam he was required to take was not "job-related and consistent with business necessity." See 42 U.S.C. § 12112(d)(4). However, the undisputed evidence in this case indicates that: (1) the CTA is subject to regulation by the federal Department of Transportation; (2) all Bus Operators and other transit operations personnel (such as Denton) are subject to federal safety regulations; (3) in order to be qualified to operate a CTA bus, or hold a position at the CTA within the broader classification of Bus Operator, a CTA employee must be medically certified by the CTA; (4) when CTA transit operations personnel (such as Denton) are transferred from one position to another, they are routinely required to submit to medical examinations to determine their fitness for duty; and (5) these examinations typically include a blood pressure check, a vision and hearing test, and a drug and alcohol screening. Denton has submitted no evidence to rebut the CTA's assertion and supporting evidence that the medical exam it required Denton to undergo was job-related

13

and necessary to the business of the CTA. Denton's alternative claim under 42 U.S.C. § 12112(d)(4) therefore also fails.

### III. CONCLUSION

For the foregoing reasons, the CTA's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 6, 2010